UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WOOD MATERIALS LLC     CIVIL ACTION

VERSUS     No. 17-10955

BERKLEY INSURANCE CO. ET AL.     SECTION I

## ORDER AND REASONS

Before the Court is a motion[1] filed by Berkley Insurance Company ("Berkley") and Tikigaq Construction, LLC ("Tikigaq") (collectively, "defendants") to dismiss several of the claims that Wood Materials LLC ("Wood") asserts against them in this case. Wood opposes[2] the motion.

For the following reasons, the Court will grant the motion in part and dismiss it without prejudice in part.

### I.

In February 2017, Wood and Tikigaq "entered into a contract" whereby Wood agreed to provide soil for a U.S. Army Corps of Engineers ("Corps") project for which Tikigaq was the general contractor.[3] Berkley issued a payment bond for the project in order to "secure Tikigaq's performance on its payment obligations to subcontractors" such as Wood.[4]

---

[1] R. Doc. No. 9.
[2] R. Doc. No. 12.
[3] R. Doc. No. 1, ¶ 8; *see also id.* ¶ 36 ("Miller Act Plaintiff had a Contract with Defendant Tikigaq to furnish material, labor, and supplies for use in the performance of the Project as required by Tikigaq's prime contract with the Owner.").
[4] *Id.* ¶ 9.

1

Wood alleges that it "was originally requested to provide 22,000 tons of topsoil with the unit price fixed at $12.75/ton" for the project.[5] This request was "memorialized" in a purchase order.[6] According to Wood, Tikigaq's prime contract with the Corps required that materials for the project be provided on a cubic yard basis, but "Tikigaq requested in writing that Wood perform and bill the job with a unit price fixed 'by the ton' rather than by the cubic yard."[7]

Wood then began to haul topsoil for the project and "invoiced Tikigaq at the rate of $12.75/ton."[8] Tikigaq paid the initial invoices as it received them.[9]

In March 2017, Tikigaq allegedly requested that Wood bill by the cubic yard, rather than by the ton, "commencing March 10, 2017."[10] Wood proceeded to provide topsoil for the project "by the cubic yard from March 15, 2017 through April 1, 2017."[11]

Wood contends that a number of invoices that it submitted to Tikigaq remain unpaid, adding up to a total amount of $374,497.02.[12] Wood alleges that it sent Tikigaq a certified letter on June 30, 2017, demanding payment of these invoices.[13]

---

[5] *Id.* ¶ 10.
[6] *Id.*
[7] *Id.* ¶ 11.
[8] *Id.* ¶ 14.
[9] *Id.*
[10] *Id.* ¶ 15.
[11] *Id.* ¶ 18.
[12] *Id.* ¶ 19. Wood alleges that "Tikigaq representatives have approved $337,548.48 for payment, yet no payment has been made." *Id.* ¶ 20.
[13] *Id.* ¶ 21.

According to Wood, it sent another demand to both Tikigaq and Berkley in July 2017.[14] However, Wood alleges that its invoices remain unpaid.[15]

In response, Wood asserts numerous claims against defendants.[16] Of those claims, defendants challenge the claims for attorney's fees under the Louisiana open account statute, the unjust enrichment claims, and the federal Prompt Payment Act claims.[17]

## II.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint, or any part of it, where a plaintiff has not set forth well-pleaded factual allegations that would entitle him to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the

---

[14] *Id.* ¶ 22.
[15] *Id.* ¶ 23.
[16] *See id.* ¶¶ 24-63.
[17] *See* R. Doc. No. 9-1, at 1.

court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

On a Rule 12(b)(6) motion to dismiss, a court limits its review "to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[18] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). In assessing the complaint, the Court must accept all well-pleaded factual allegations as true and liberally construe all such allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Where "the complaint 'on its face show[s] a bar to relief,'" then dismissal is the appropriate course. *Cutrer v. McMillan*, 308 Fed. App'x. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

### III.

As mentioned, defendants seek dismissal of Wood's claims for attorney's fees under the Louisiana open account statute, Wood's unjust enrichment claims, and Wood's federal Prompt Payment Act claims. The Court will consider each type of claim in turn.

---

[18] In connection with its opposition to defendants' motion, Wood filed with the Court a copy of an August 25, 2017 letter sent from Berkley Surety Group (on behalf of defendant Berkley) to Wood. The Court notes that it has not considered this extraneous material in resolving defendants' motion to dismiss.

4

## A.

Under the Louisiana open account statute,

> [w]hen any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.

La. R.S. § 9:2781(A); *see also Ormet Primary Aluminum Corp. v. Ballast Techs., Inc.*, 436 Fed. App'x 297, 300 (5th Cir. 2011) (per curiam) (summarizing § 9:2781(A)). In other words, the statute "provides for the recovery of attorney's fees in cases where a claimant [successfully] sues another for failure to pay an open account."[19] *Congress Square Ltd. P'ship v. Polk*, No. 10-317, 2011 WL 837144, at *4 (E.D. La. Mar. 4, 2011) (Fallon, J.).

The open account statute defines an "open account" to include "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." La. R.S. § 9:2781(D). Under the statute, an "open account" also includes "debts incurred for professional services, including but not limited to legal and medical services." *Id.*

While recognizing that "an agreement necessarily underlies an open account," courts consistently distinguish between "open accounts" on the one hand and

---

[19] The open account statute is "construed strictly," as awards of attorney's fees are the exception, not the rule, under Louisiana law. *Ormet Primary*, 436 Fed. App'x at 300.

5

"ordinary contracts" on the other.[20] *Congress Square*, 2011 WL 837144, at *4 (citing cases). To this end, Louisiana courts have articulated "four factors" to guide the determination of "whether a course of dealing qualifies as an open account" under the open account statute: "(1) whether there were other business transactions between the parties; (2) whether a line of credit was extended by one party to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings." *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 174 (5th Cir. 2007).

However, these judicially recognized factors are far from the be-all and end-all of the relevant analysis. The Louisiana Supreme Court has opined that the factors are simply no substitute for the plain statutory text. *See Frey Plumbing Co., Inc. v. Foster*, 996 So. 2d 969, 972 (La. 2008) (concluding that the definition of "open account" in the open accounts statute "must be applied as written," as it is "clear and unambiguous on its face and its application leads to no absurd consequences"); *see also id.* ("To the extent the prior case law has imposed any requirements which are inconsistent with the clear language of [the statutory definition of 'open account'], those cases are overruled."). Thus, for instance, "there is no *requirement* that there must be one or more transactions between the parties, nor is there any *requirement* that the parties must anticipate future transactions," to have an open account. *Id.* (emphasis added).

---

[20] Accordingly, "[a] claim for breach of contract and a claim under the open account statute are considered distinct causes of action." *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 174 (5th Cir. 2007).

6

Ultimately, then, these factors do not govern the open account inquiry. Rather, the case law suggests that the inquiry turns primarily on questions of an agreement's determinacy: an open account, as opposed to an ordinary contract, "generally leaves undetermined key aspects of the obligation." *Congress Square*, 2011 WL 837144, at *5; *cf. Ormet Primary*, 436 Fed. App'x at 301 ("As the obligation in question constituted an open account *because of its undetermined total*, and as Ormet has complied with all requirements of the Louisiana Open Accounts Statute, it is entitled to attorneys' fees." (emphasis added)).

For example, an open account may leave undefined "the time period during which services will be rendered or the total cost of the services for which a party may be liable." *Congress Square*, 2011 WL 837144, at *5. Further, as the Fifth Circuit has pointed out, "[a] hallmark of an open account is that [t]he total cost, unlike a contract, is generally left open or undetermined, although the rate for specific services may be fixed, such as an hourly rate." *Ormet Primary*, 436 Fed. App'x at 301 (internal quotation marks omitted) (alteration in original). In short, "an open account, as its name indicates, is an account that is 'open to future modification,' one 'that is left open for ongoing debit and credit entries . . . and that has a fluctuating balance until either party finds it convenient to settle and close, at which time there is a single liability.'" *Congress Square*, 2011 WL 837144, at *5.

Defendants contend that the factual allegations in Wood's complaint show that the agreement between Wood and Tikigaq "has definite terms as to the total amount of the material to be purchased, the price of the material per ton, and the total amount

7

to be paid."[21] According to defendants, these features render the agreement to be nothing more than a run-of-the-mill contract—and disqualify it from falling under the purview of the open accounts statute.[22]

The Court disagrees with defendants' characterization of Wood's allegations. In its complaint, Wood alleges that it "entered into a contract with Tikigaq (as contractor) to provide soil" for a Corps project.[23] Wood then alleges that it "was originally requested to provide 22,000 tons of topsoil with the unit price fixed at $12.75/ton, as memorialized in" a purchase order.[24] According to Wood, Tikigaq later changed the measure by which Wood would provide topsoil for the project, from a tonnage basis to a cubic yard basis.[25]

Despite defendants' assertions to the contrary, Wood's factual allegations do *not* show that the agreement between Wood and Tikigaq specified that Wood would provide a particular amount of topsoil (22,000 tons) for the project at a particular price ($12.75/ton) for an enumerated total amount. Indeed, when construed in the light most favorable to Wood, the allegations in the complaint can be understood to show that the agreement left these terms open.

For example, Wood alleges that Tikigaq "originally requested" a certain amount of topsoil, not that the *agreement* between Wood and Tikigaq *required* Wood

---

[21] R. Doc. No. 9-1, at 5.
[22] *Id.* at 4-5 (citing *Akers v. Bernhard Mech. Contractors, Inc.*, 137 So. 3d 818, 829 (La. Ct. App. 2d Cir. 2014)).
[23] R. Doc. No. 1, ¶ 8.
[24] *Id.* ¶ 10.
[25] *See id.* ¶¶ 13-15.

8

to deliver a certain amount of topsoil. Similarly, Wood alleges that the price for the "originally requested" 22,000 tons of topsoil was $12.75/ton, not that the *agreement* between Wood and Tikigaq *set the price* at $12.75/ton. This understanding of Wood's allegations is bolstered by the allegation that the "original[ ] request[ ]" for 22,000 tons of topsoil at $12.75/ton was "memorialized" in a *purchase order*, *not* in the agreement.[26]

That being said, the Court is not convinced that Wood has pleaded factual allegations sufficient to state claims against defendants under the open account statute. The complaint simply requires too much conjecture.

The Court is also not convinced, however, that Wood could not satisfy pleading requirements with respect to such claims if given an opportunity to do so. Therefore, the Court will dismiss defendants' motion with respect to the open accounts claims without prejudice and allow Wood an opportunity to amend its complaint. If Wood does not amend its complaint, or if defendants believe that Wood's amended complaint continues to inadequately plead open account claims, then defendants may re-urge their motion.

## B.

A claim for unjust enrichment under Louisiana law consists of five elements: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment or impoverishment; and (5) no other remedy at law." *Perez v. Util. Constructors, Inc.*,

---

[26] *Id.* ¶ 10.

No. 15-4675, 2016 WL 5930877, at *1 (E.D. La. Oct. 12, 2016) (Africk, J.) (citing *Baker v. Maclay Props. Co.*, 648 So.2d 888 (La. 1995)); *see also* La. Civ. Code art. 2298 (codifying Louisiana's doctrine of unjust enrichment).

Defendants move to dismiss Wood's unjust enrichment claims based solely on the fifth element, arguing that "[s]ince Wood [ ] has asserted several other remedies [besides unjust enrichment], it is not entitled to maintain a claim for unjust enrichment."[27] Pointing to Wood's complaint, defendants contend that "[t]here is a contract between the parties and the [c]ontract defines the relationship between [them]."[28] Defendants thus contend that Wood has another remedy available to it— claims for breach of contract—and that Wood cannot maintain its unjust enrichment claims as a result.[29]

Wood counters that it has the right under the Federal Rules of Civil Procedure to plead unjust enrichment in the alternative.[30] While recognizing that "some courts

---

[27] R. Doc. No. 9-1, at 6.
[28] *Id.* at 7.
[29] *See* R. Doc. No. 17, at 7 ("Because whether this motion to dismiss should [be granted should] solely be decided on the facts alleged in the Complaint and Wood asserts therein that there is a contract between the parties and that Tikigaq breached the contract by not paying the materials, labor, and supplies provided, Wood has asserted another available remedy—breach of contract—that precludes its claim for unjust enrichment.").
[30] *See* R. Doc. No. 12, at 4. "The Federal Rules of Civil Procedure allow a party to plead separate, inconsistent claims in the alternative." *Perez v. Util. Constructors, Inc.*, No. 15-4675, 2016 WL 5930877, at *1 (E.D. La. Oct. 12, 2016) (Africk, J.). Specifically, Rule 8(d)(2) provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."

have held that unjust enrichment is a subsidiary claim that cannot be pleaded in the alternative," Wood contends that "this is a minority view."[31]

"[I]f there is a contract between the parties[,] it serves as a legal cause, an explanation, for the enrichment." *Edwards v. Conforto*, 636 So. 2d 901, 907 (La. 1993), *on reh'g* (May 23, 1994). "[O]nly the unjust enrichment for which there is no justification in law or *contract* allows equity a role in the adjudication." *Id.* (emphasis and alteration in original). Thus, if "[t]he justification or cause for [an] enrichment was the contractual agreement between the parties," then "[u]njust enrichment is without application." *Id.*

As this Court has observed, "[s]ometimes alternative pleading of unjust enrichment is permissible and sometimes it is not." *Perez*, 2016 WL 5930877, at *2 n.5. "Where it is clear that the plaintiff has or had at one point 'another available remedy' under Louisiana law, then alternative pleading of an unjust enrichment claim is not allowed regardless of whether the plaintiff pursues that remedy in litigation." *Id.* The question is whether "factual disputes preclude [the] Court from making a threshold determination as to whether a plaintiff has an available legal claim." *Id.* For example, "[w]here . . . the Court has no way to resolve at the pleading stage whether [ ] there was a valid contract that existed between the parties . . ., Rule 8 [of the Federal Rules of Civil Procedure] permits [a plaintiff] to plead and maintain [unjust enrichment] until those factual questions are resolved whether on summary judgment or at trial." *Id.*

---

[31] R. Doc. No. 12, at 5 (internal citation omitted).

11

Accepting the factual allegations in Wood's complaint as true and construing them in the light most favorable to Wood, and in light of defendant's concessions in its reply brief, the Court concludes that Wood's unjust enrichment claims do not survive defendants' motion. In its complaint, Wood alleges that it provided soil for a Corps project pursuant to a "contract" with Tikigaq.[32] Wood goes on to accuse Tikigaq of "materially breach[ing]" this contract "by refusing to compensate [Wood] for the material, labor, and supplies that [Wood] furnished for use on the [p]roject."[33] Wood alleges that this breach was the cause of its entire injury.[34] In their reply brief, defendants concede that Wood's allegations state breach of contract claims against them.[35]

Defendants further state in their reply brief that, "[c]ontrary to Wood's contention that Tikigaq may later challenge the validity of the contract, Tikigaq admits the existence of the contract between Wood and Tikigaq."[36] Reading both the dependent and independent clauses of defendants' statement together, defendants concede the existence of a valid contract between Wood and Tikigaq. *Cf. Double R & J Trucking Serv., Inc. v. Patton Installations of Florida, L.L.C.*, No. 14-2234, 2015 WL 2452343, at *4 (E.D. La. May 21, 2015) (Morgan, J.) ("[T]here is no factual dispute that there was a contract between Patton and Double R & J, and there is no indication that the contract is unenforceable. Thus, Double R & J has an adequate remedy

---

[32] R. Doc. No. 1, ¶ 8; *see also id.* ¶ 36.
[33] *Id.* ¶ 38.
[34] *Compare id.* ¶¶ 39-40, *with id.* at 12 (enumerating the damages sought by Wood).
[35] *See* R. Doc. No. 17, at 6.
[36] *Id.*

12

available at law because it has, at a minimum, a breach of contract claim against Patton.").

As Wood has stated plausible breach of contract claims against defendants to recover for its alleged injury, Wood is precluded from asserting unjust enrichment claims against defendants for the same alleged injury.[37] *Cf. Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 241, 242 (La. 2010) (per curiam) ("In the instant case, plaintiff's original petition alleges he suffered harm as a 'direct result of the negligent and tortious conduct' of defendant. Having pled a delictual action, we find plaintiff is precluded from seeking to recover under unjust enrichment."); *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 407-08 (5th Cir. 2004) (affirming a district court's dismissal on a motion to dismiss of an unjust enrichment claim under Louisiana law, because a "valid contract" controlled the relationship between the parties, *id.* at 408); *Oliveira v. Martins*, No. 14-482, 2014 WL 4186675, at *7 (E.D. La. Aug. 21, 2014) (Africk, J.) (dismissing a plaintiff's unjust enrichment claim on a motion to dismiss after concluding that the plaintiff "has a plausible claim for breach of contract and . . . a plausible claim pursuant to LUPTA"); *Westbrook v. Pike Elec., L.L.C.*, 799 F. Supp. 2d 665, 672 (E.D. La. 2011) (Duval, J.) ("[C]onsidering plaintiff has alleged causes of action based on breach of contract,

---

[37] Wood's reliance on this Court's opinion in *Perez* is misplaced. In *Perez*, the Court concluded on a motion for summary judgment that a genuine dispute of material fact existed as to the enforceability of the contract underlying the plaintiff's breach of contract claim. *See* 2016 WL 5930877, at *2. If the contract was deemed unenforceable, then the plaintiff would not have a breach of contract claim available to him. *See id.* In this case, defendants do not contest the existence of a valid contract between Wood and Tikigaq.

13

breach of implied duty of good faith and fair dealing and a violation of the Louisiana Unfair Trade Practices Act, a claim for unjust enrichment cannot lie and must be dismissed.").

The Court will therefore grant defendants' request to dismiss Woods' unjust enrichment claims.

C.

The federal Prompt Payment Act "confers [ ] rights and duties on federal contractors and subcontractors" in addition to those conferred under the Miller Act. *United States ex rel. Cal's A/C & Elec. v. Famous Const. Corp.*, 220 F.3d 326, 328 (5th Cir. 2000); *see* 31 U.S.C. § 3901 *et seq.* Citing numerous district court opinions, defendants argue that Congress did not create a private right of action to enforce the federal Prompt Payment Act.[38] One of the opinions on which defendants rely was issued by this Court. *See Masonry Sols. Int'l, Inc. v. DWG & Assocs., Inc.*, No. 15-2450, 2016 WL 1170149, at *4 (E.D. La. Mar. 25, 2016) (Africk, J.) ("As to the Federal Prompt Payment Act, 31 U.S.C. § 3905, DVA cites several cases expressly holding that such Act does not create an independent cause of action. The Court's own research buttresses that legal conclusion." (internal citations omitted)).

In its opposition to defendants' motion, Wood does not acknowledge, let alone discuss, these opinions. Rather, Wood points to a single 1999 opinion by Judge Scott of the Western District of Louisiana: *United States ex rel. Cal's A/C & Elec. v. Famous*

---

[38] R. Doc. No. 9-1, at 7.

14

*Const. Corp.*, 34 F. Supp. 2d 1042, 1043-44 (W.D. La. 1999).[39] Wood argues that Judge Scott's opinion in *Cal's A/C* stands for the odd proposition that state law controls the availability of a private right of action under a federal statute—namely, that where state law allows a subcontractor to seek attorney's fees and penalties from its general contractor due to the general contractor's failure to timely pay the subcontractor for its work, then the federal Prompt Payment Act provides a private right of action.[40]

Wood misreads Judge Scott's opinion. In any event, the Fifth Circuit has rejected the opinion's reasoning. *Compare Cal's A/C*, 34 F. Supp. 2d at 1044, *with Cal's A/C*, 220 F.3d at 328. Thus, the single case that Wood identifies as purportedly supporting its position is no longer supportive of Wood's position.

The Court concludes that plaintiff has failed to meet its "relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the relevant statute." *Lundeen v. Mineta*, 291 F.3d 300, 311 (5th Cir. 2002) (citations omitted). As such, the Court will dismiss Wood's federal Prompt Payment Act claims.

**IV.**

Accordingly,

---

[39] *See* R. Doc. No. 12, at 5-6. The Court notes that this opinion by Judge Scott was not the subject of the Fifth Circuit's review in *United States ex rel. Cal's A/C & Elec. v. Famous Const. Corp.*, 220 F.3d 326 (5th Cir. 2000). Rather, the Fifth Circuit's *Cal's A/C* opinion concerned an opinion by Judge Lemelle in a different case.
[40] *See* R. Doc. No. 12, at 5.

15

**IT IS ORDERED** that defendants' motion is **GRANTED IN PART** and **DISMISSED WITHOUT PREJUDICE IN PART**.

**IT IS FURTHER ORDERED** that Wood's unjust enrichment and federal Prompt Payment Act claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that, with respect to Wood's claims for attorney's fees under the Louisiana open account statute, defendants' motion is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Wood may file an amended complaint by **February 7, 2018**.

New Orleans, Louisiana, January 24, 2018.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**